JAMES NELSON, ADMINISTRATOR, ET AL., APPELLANTS, V. FRANK P. WICKHAM ET AL., APPELLEES.

FILED FEBRUARY 10, 1910.    No. 15,886.

1. **Deeds: PRESUMPTIONS: MENTAL CAPACITY: UNDUE INFLUENCE.** In a case where a father, 75 years of age, who owned a farm of 120 acres on which he lived with his son, made a conveyance of the farm to his son, without any pecuniary consideration, during his last illness and about three weeks before his death, and by which conveyance his other child was excluded from any participation in his property, the presumptions are against the validity of the conveyance. A court of equity will scrutinize the transaction very closely, and unless from all the evidence in the case the court is satisfied that the grantor was mentally competent to make the deed, and that no undue influence had been exerted, the conveyance will not be upheld.

2. ————: CANCELATION: EVIDENCE; REVIEW. Where some time prior to the execution of such a conveyance it is shown that the

Nelson v. Wickham.

grantor had made a will conveying 80 acres of his farm to his son and 40 acres to his daughter, who was a married women of about 35 years of age, and that by reason of his prolonged sickness additional care and trouble was imposed upon the son and additional expense incurred, which under the provisions of the will the son would be compelled to pay, and it is further shown that the mind of the deceased was entirely unimpaired at the time of the conveyance and for several weeks afterwards, that he informed the scrivener that he was making the conveyance for the care and trouble that his son had been put to,·and that he afterwards called for the will and destroyed it, this court, trying the case *de novo*, will not set aside a finding of the trial court that the conveyance was made voluntarily and without undue influence, and was valid. .

APPEAL from the district court for Gage county: JOHN B. RAPER, JUDGE. *Affirmed.*

*E. O. Kretsinger,* for appellants.

*Hazlett & Jack, contra.*

LETTON, J.

This is an action in equity brought for the purpose of procuring the cancelation and setting aside of a deed of conveyance made by one Horace M. Wickham shortly before his death to his son, Frank P. Wickham. The action was begun by Clarissa M. Nelson, one of the children of the deceased, but during its pendency she died. Revivor was had in the name of James Nelson, as her administrator, and as father and next friend of Horace Nelson, their only child.

Horace M. Wickham, the deceased, lived in Gage county. The petition alleges in substance that Horace M. Wickham died on the 5th day of September, 1906, leaving surviving him a son, Frank P. Wickham, and a daughter, Clarissa M. Nelson. At the time of his death he owned 120 acres of land in Gage county, upon which he resided; that on the 11th of August, 1906, Frank P. Wickham and Mattie Wickham, his wife, the defendants, procured Hor-

ace M. Wickham to convey this land to him; that at the time the deceased was nearly 75 years of age, and was suffering from abscesses, Bright's disease, blood poisoning, and mental decay, and was of unsound mind to such an extent as to be wholly incapable of transacting business; that he was unable to sign his name at the time, and was so mentally and physically incompetent that he was unable to make a delivery of the deed; that no consideration was paid for the deed, but that it was procured with the intention of cheating and defrauding Clarissa M. Nelson out of her share of her father's property. The prayer is to set aside the deed and to quiet the title to half of the land in Horace Nelson.

The answer substantially is to the effect that Frank P. Wickham is 35 years of age; that he has always from the time he has been able to work, with the exception of 18 months when his father was absent from Gage county, remained upon his father's farm and worked continuously without salary or compensation, except his clothing and maintenance; that about the year 1900 the deceased ceased doing manual labor, and to induce the defendant to remain with him and care for him during his life he promised and agreed that, if Frank P. Wickham would assume all indebtedness contracted by Horace M. Wickham, pay all his bills and expenses thereafter, and release him from any claim for labor and services due and owing by him to the said Frank P. Wickham, and for his faithful conduct theretofore, he would convey, transfer and turn over all of his property free of rent to these defendants to farm and manage as their own. Defendants say that they faithfully complied with these stipulations and agreements, and that while Horace M. Wickham was of sound mind and memory he executed and delivered the deed in controversy in satisfaction of the aforesaid agreement and promise. They deny that the deed was obtained fraudulently; that the deceased was of unsound mind; that he did not know and understand what he was doing; and deny that he was possessed of any personal property at the

time of his death. They also allege that they have paid medical and funeral expenses and other debts since the death of the deceased, in accordance with the agreement.

The district court found generally for the defendants; and found further that the deceased was mentally competent to make the deed; that no undue influence was exerted; that he made and executed the same voluntarily, understanding fully the purpose thereof, and without being influenced by any one, and rendered judgment of dismissal, from which judgment plaintiffs have appealed.

The evidence shows that the deceased had lived with his son Frank upon the home farm since the year 1900, when he returned from an absence of 18 months in Merrick county. In the early summer of 1906 he had in some way injured his right hand by a scratch or bruise, and blood poisoning resulted. On June 25 he called at the office of Dr. Roe, a practicing physician in Beatrice, for the purpose of having the doctor examine his hand and arm. The doctor at once took him to a sanitarium in that city, and attended him there from that time until he was removed home to the farm. The arm became much inflamed and swollen, open sores developed, and he was unable to use his right hand or arm. The arm was kept bandaged, and his fingers were swollen and stiff. After a week or two Bright's disease set in, and his feet and lower limbs became swollen. He seemed to improve, and in the latter part of July he was removed home, but soon began to fail again. On August 10 Dr. Roe received a telephone message from Frank P. Wickham, saying that his father wanted to make a deed, and asking him to bring a lawyer or notary with him when he came. The doctor asked him whom he should bring, and he said he did not care. The next day he took Mr. Beaver, who was an insurance agent and notary public, to the farm with him. Beaver testifies that when they reached the farm he went into the room where the deceased was lying on the bed; that Mrs. Wickham said, "Here is Mr. Beaver and Dr. Roe";

that deceased said, "How do you do", and nodded his head, and that he asked the deceased what he wanted of him and that Mr. Wickham said that he wanted to make a deed of his farm to Frank. Beaver inquired whether he had the old deed to the farm. The deceased said that he had, and Mrs. Wickham procured the old deed from a drawer in the kitchen, and gave it to him, and that he copied the description from the old deed, writing it on the kitchen table. After the deed was written he returned to the room where Mr. Wickham was, read the deed to him, and asked him if he would make his mark. That he said he would; that Dr. Roe and Frank then raised him up in the bed, and he took hold of the pen with his left hand while the mark was made, Beaver holding the pen. He then acknowledged the deed. He said that he wanted to make the deed to Frank because of what he owed him for the trouble and expense he had been to for him. Frank was there part of the time, but, so far as the testimony shows, he took no part in the proceedings except to help raise his father in order to hold the pen, and said nothing to his father with reference to making the deed. This testimony is corroborated by Dr. Roe.

A large number of witnesses were examined with reference to the deceased's mental condition, and there is absolutely no evidence of any weight or value whatever to show that in any respect the intellect of the deceased was in anywise impaired at the time of the execution of the deed, or, in fact, at any time, except immediately before his death, which occurred on September 5, and the weakness at that time appeared to be due more to actual physical disability than to a direct affection of the brain. The testimony further shows that his daughter, Clarissa M. Nelson, was a patient in the sanitarium for a portion of the time that her father was there; that her bed had been in the same room or ward for a short time, and had been removed to another room at his request, and that the old gentleman had complained of being worried by her. He also told his stepdaughter of Clarissa speaking

to him about the disposition of his personal property. On the evening of the day that the deed had been executed, the deceased took a will, which had some time previously been prepared, and handed the same to his stepdaughter, Mrs. Connolly, who lived in Nuckolls county, but who was visiting the home for about a week at this time. He asked her to read the will to him, which she did. By the terms of this instrument 80 acres of the farm were left to Frank, subject to the debts, and 40 acres to Clarissa. After reading it she returned the will to him, when he tore it in two, and at his request she burned it. There is other evidence in the record tending to show that the disposition of the property made by the will was known to the family before this. Under section 329 of the code, defendants were not permitted to testify as to the transaction, so we are compelled to look to surrounding circumstances only to test the validity of the conveyance. The deceased was a man of intelligence, had been a member of the county board of Gage county, and for many years upon the school board.

The plaintiff contends that the circumstances show conclusively that the deed was the result of undue influence exerted upon the failing mind and will of the deceased, was without consideration, was never delivered, and is presumptively void. The principles of equity jurisdiction with relation to such transactions are plain and well settled, and have often been announced by this court. In *Bennett v. Bennett,* 65 Neb. 432, we said: "A court of equity will scrutinize jealously a transaction as to which there is ground for holding that influence has been acquired over a person of weak mind, and has been abused. *Smith v. Kay,* 7 H. L. Cas. (Eng.) *750, *759. The circumstances under which a conveyance was made, the condition of the grantor at the time, and the injustice to him and his heirs if it is upheld, may be such as to cast upon the grantee the burden of showing that it is untainted with undue influence, imposition, or fraud, but is the intelligent and deliberate act of the grantor." In *Gibson v.*

*Hammang,* 63 Neb. 349, in rebutting the contention of the appellant that the relation of parent and child is so far one of trust and confidence that, in any case where one obtains a conveyance from the other, the burden is upon the grantee to establish that the transaction was fair and honest, it was said by POUND, C.: "While the relation predisposes to trust and confidence, yet some circumstances of reliance or dependence of one upon the other or habitual trust ought to appear in addition. No presumption of fraud or undue influence arises from the mere existence of the relation. *Samson v. Samson,* 67 Ia. 253; 27 Am. & Eng. Ency. Law (1st ed.) 488. Where the parent is old and feeble and dependent upon the child, or where the child has been given the control and management of the parent's affairs, or has been largely consulted therein, or where they have long lived together, the fiduciary relation may be clear enough." And again: "In other words, though the relation of parent and child may not necessarily and of itself alone cast a burden of proof upon the one receiving a gift or conveyance from the other, so as to bring the rule of law as to burden of proof in cases of relations of trust and confidence into play, it is so far liable to abuse that a strong presumption of fact may arise, from circumstances of a particular transfer, which will require close scrutiny of the transaction, and cast a burden upon the grantee. It is a familiar doctrine that a court of equity scans with great jealousy a transaction where there are any grounds for holding that influence has been acquired and abused, or that confidence has been reposed and betrayed. *Smith v. Kay,* 7 H. L. Cas. (Eng.) *750, *759." We consider as settled, therefore, the contention of plaintiff's counsel that the transaction in this case should be closely scrutinized, and that the burden is upon the defendants to overcome the sinister presumptions arising under such circumstances.

We are unable to find any evidence in the record to sustain the allegations of the petition that the deceased was of unsound mind to such an extent as to be incapable of

transacting business at the time of the execution of the deed. Taking all the circumstances of the case together, and bearing in mind that a court of equity will closely scrutinize such a transaction, we are convinced that the change in conditions subsequent to the time that the will was made, the added care and trouble which the sickness of the deceased imposed upon his son and his wife, and the additional expense which would all fall upon Frank if the disposition of his property made by the will was not changed, operated to induce the deceased to make the conveyance. *West v. West*, 84 Neb. 169. His daughter was apparently provided for. She was a married woman of about 35 years of age at this time, living with her husband in a distant county. It is true she had a little son who had been named after the deceased, but no provision had been made for the grandson in the will, and there was nothing to indicate that he was in his grandfather's mind at the time of the execution of either deed or will.

The plaintiff contends that there is no proof of the delivery of the deed. It is true that the notary does not state what was done with the deed after the grantor made his mark and acknowledged it, except to say that it was witnessed by himself and Dr. Roe. It is an established principle that the possession of a deed by the grantee is ordinarily *prima facie* evidence of delivery, and that the burden of proof is upon him who disputes this presumption. *Wilson v. Wilson*, 85 Neb. 167; *Roberts v. Swearingen*, 8 Neb. 363; *Brittain v. Work*, 13 Neb. 347. The deed was recorded about 2 o'clock in the afternoon of the same day. While there is no evidence as to this fact, it was probably taken to Beatrice by the notary. The fact, however, that in the evening the deceased called for his will and destroyed it is a circumstance tending to show that he had previously made another disposition of his property, and, when taken in connection with the circumstances attending the making and signing of the deed, indicates that he was of the opinion that the changed disposition had been made effective. We think the circum-

stances taken in connection with the presumption arising from possession of the deed were sufficient to establish delivery.

The case is very near the border line, but the failure to show any mental weakness carries great weight. The trial judge had the witnesses before him, and the case seems to have been carefully tried, and with painstaking discrimination as to the exclusion of incompetent evidence on the part of the defendants. After according plaintiff all the presumptions which the law affords, we are convinced that the conclusion of the trial court should be sustained.

The judgment of the district court therefore is

AFFIRMED.