DANIEL G. WINSLOW ET AL., APPELLEES, V. JEFFREY W. WINSLOW, APPELLANT.

FILED APRIL 24, 1911.   No. 16,206.

1. Deeds: DEED FROM PARENT TO CHILD: PRESUMPTIONS. No presumption arises against the validity of a conveyance from a parent to a child from the mere fact of that relation.

2. ———: ———: ———. When a deed is executed without consideration by an aged parent shortly before her death, whereby all of the grantor's estate is conveyed to one child to the exclusion of her other children, without any apparent reason for so doing, the courts will scrutinize the transaction with care; the presumption is against the validity of the deed.

3. ———: ———: ———: EVIDENCE. The evidence is found to be insufficient to overcome the presumption against the validity of the deed from mother to son under the circumstances surrounding its execution.

APPEAL from the district court for Sheridan county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*J. H. Edmunds,* for appellant.

*A. W. Crites* and *C. Patterson, contra.*

SEDGWICK, J.

Catherine Winslow died at Pine Ridge, Nebraska, in February, 1907. She was nearly 71 years of age at the time of her death, and left surviving her four children. two sons and two daughters. She owned 320 acres of land which she had acquired under the homestead and pre-emption laws. She had been divorced from her husband, and within the year prior to her death had executed two deeds. In the one she conveyed this land to her son Jeffrey Winslow, and in the other to her daughter, Mrs.

Corder. After her death this action was brought by her heirs to set aside these deeds, and upon the trial in the district court for Sheridan county a judgment was entered canceling the deeds. In this judgment Mrs. Corder acquiesced, but the son Jeffrey Winslow has appealed to this court.

The daughters were married, and one of them, Mrs. Corder, never lived with her mother upon this land until December, 1889; from that time she remained there between three and four years. The other daughter and the two sons lived upon the farm with their mother until the daughter was married and left her mother, in 1899. From that time for about five years the son, Daniel Winslow, who was an unmarried man, tilled the farm, and the son Jeffrey was absent from home. Daniel was away from home on a visit in the winter of 1903-1904, and, when he returned in March of 1904, he found his mother confined to her bed with a broken hip. She appears to have desired that the two sons should jointly care for the farm, but this was not satisfactory to the boys, and the result was that Jeffrey, who was also a single man, remained with his mother. Thereupon at her suggestion a contract of lease was prepared whereby Jeffrey, in consideration of a portion of the crops and a share of the increase of his mother's live stock, was to have the use of the land for five years, but this instrument was not executed until Mrs. Winslow, in June, signed the deed to Jeffrey which is now in question. Jeffrey testified upon the trial that, before the deed was made and during the time that the negotiations for the lease were pending, he agreed with his mother to stay with her and care for her during the remainder of her life; and that before the deed was recorded he gave her $200 in cash. There was considerable evidence in the case, and the question for the trial court to determine was whether this deed was the voluntary and free act of Mrs. Winslow, or whether it was executed upon impulse caused by undue and improper influence, and without consideration and appreciation on the part

of Mrs. Winslow of the circumstances and conditions then existing, and the true nature and effect of the transaction.

No presumption arises against the validity of a con-veyance from a parent to a child from the mere fact of that relation. *Gibson v. Hammang,* 63 Neb. 349; *Ward v. Ward,* 86 Neb. 744. When, however, a deed is executed without consideration by an aged parent shortly before her death, whereby all of the grantor's estate is conveyed to one child to the exclusion of her other children, the courts will scrutinize the transaction with jealous care, and the presumption is against the validity of the deed., *Nelson v. Wickham,* 86 Neb. 46; *Bennett v. Bennett,* 65 Neb. 432. There is some evidence in the record tending to show that one of the daughters had been somewhat neglectful of her mother's welfare, and had failed in some respects in the devotion which a child usually shows to-ward an aged and decrepit parent, but this daughter had contributed part of her earnings as a school teacher to the family support, and it may be that the thought in her mind that she had not been fully compensated was in some degree the cause of her neglect. During the latter part of her life, Mrs. Winslow was suffering from feeble health and several accidents which she had sustained, and while she was not insane, but had an active mind, she appears to have been of an impulsive disposition, acting frequently without due consideration as to consequences and without that deliberation which might enable her to realize the full result of her actions. Daniel, the youngest of the children, lived at home and worked for the benefit of his mother and the family longer than any of his brothers and sisters. After he had grown to young man-hood, he frequently worked out for wages, but brought his wages home, and they also were applied to the use of his mother and the family. The defendant Jeffrey is the eldest son. He appears to have been considerable of a rover and trader, but seems never to have accumulated any-thing. She seems to have had a penchant for making deeds. She offered at one time to deed the land to her

daughter, the plaintiff, Mrs. Atwater, but Mrs. Atwater and her husband both declined to accept a deed, telling her that that was not the proper thing to do. At another time she made a will in which she gave the home place to Daniel, making certain bequests to some of the others, and giving defendant Jeffrey one dollar. In September, 1903, the fall before she made the deed in controversy here to Jeffrey, she made a deed of the land to Daniel. It was left in a bank. She subsequently went to the bank and got the deed and destroyed it, just as she probably would have done with Jeffrey's deed, had he not recorded it. About two years or so before she died, she went to the office of a Mr. Gilmore, a practicing attorney at Hays Springs, in company with her son Daniel, and asked Mr. Gilmore to draw a will in Daniel's favor. After instructing him as to the provisions of the will, she departed, and about two or three weeks later she returned to the office with Jeffrey and wanted the will changed so as to give everything to him. Mr. Gilmore did nothing further toward preparing the will. He testified that, when he first knew Mrs. Winslow, she was a pretty bright woman, but that at the time she appeared at his office she was not what she was when he first knew her, "that is, in her mental make-up"; that he "figured" she was not mentally competent. On cross-examination he testified: "Q. Had you ever noticed anything along that line until you were inquired of as a witness in this case? A. With reference to this woman? Q. Yes. A. Yes, sir; I did. Q. When was it, and what was it? A. Well, sir, that was why I didn't complete the second will, I figured it was a waste of my time to do it." As above stated, the deed to Daniel was made in September, 1903. Jeffrey and Daniel were both at home during the winter. When they declined to work the farm jointly, as above stated, Jeffrey stayed on the farm and Daniel left. A Mr. and Mrs. Schmidt lived about a mile and a half from the Winslow place. On April 1, 1904, Jeffrey and his mother went to the Schmidt home, and Schmidt prepared for them the five-year lease of the

lands above mentioned. Mr. Schmidt testified that the lease was signed by Mrs. Winslow and Jeffrey at that time, but Jeffrey testified that it was not signed until the date of its acknowledgment, June 16, 1904. He states that, after the lease was drawn, Schmidt told them that it would have to be acknowledged before a justice of the peace. Jeffrey and his mother returned home, leaving the lease with Schmidt. On June 16, 1904, Jeffrey and his mother again went to Schmidt's home, where by previous appointment they were met by Justice Lake and his wife. They all remained at Schmidt's house for dinner. During the forenoon Justice Lake prepared the deed from Mrs. Winslow to Jeffrey for the half section of land. After the deed was signed and acknowledged, Justice Lake handed it to Jeffrey, stating that that now belonged to him. Jeffrey put the deed in his pocket. At that time, or within an hour thereafter, the lease was acknowledged and left in Schmidt's hands. After Jeffrey and his mother had gotten into the buggy to drive home, the mother, Mr. Schmidt testifies, said: " 'Jeff, what did you do with that deed?' and he said, 'I have got it,' and she said 'You had better leave it here with Henry Schmidt. It will be safer than if you take it home and put it in your trunk.' So Jeff took it out of his pocket and gave it to me." The deed remained in the possession of Mr. Schmidt until the 13th of the next month, when Jeffrey alone called at the residence of Mr. Schmidt and asked for it. Schmidt gave it to him, and he took it to the county seat and had it recorded. After it was recorded, Jeffrey returned it to Mr. Schmidt. Jeffrey had the deed recorded without the knowledge of his mother. Mrs. Atwater testified that, after her mother's death, she had a talk with Jeffrey, in which he claimed to have paid a thousand dollars for the place, and at another time said that his mother had given it to him; that he also said that his mother had asked for the deed back again after it was made, and he said he did not do business that way. "Q. Did he tell you what induced her to ask for a return of the deed? A. Well,

16

she was dissatisfied, dissatisfied with him. She wasn't getting the care she should have. Q. That is what he said, was it? A. Yes, sir; that is what he said she told him. Q. And that is why she asked for the return of the deed? A. Yes, sir." This testimony was not denied by Jeffrey. Mrs. Winslow seems to have soon become very much dissatisfied with her life with Jeffrey, and she then opened up correspondence with her daughter, defendant, Mrs. Corder, with a view to having the daughter take her to her home. In the meantime Daniel had ascertained that Jeffrey had a recorded deed for the farm, and had upbraided his mother for giving the deed. This was the first Mrs. Winslow knew that the deed had been recorded. She at once consulted a lawyer, who told her that the deed was void. The five-year lease was also recorded at the same time with the deed. The result of her correspondence with Mrs. Corder was that that lady went to see her mother and talked the matter over with her, whereupon Mrs. Winslow executed a deed to Mrs. Corder for the half section of land, and also gave her a bill of sale of all her personal property, worth about $500. Mrs. Corder then took her mother to her home at the Pine Ridge agency, where she made her very comfortable until she died, about two months and five or six days thereafter. That Mrs. Winslow even then did not understand that she had made a final disposition of her estate is shown by the fact that during the two months that she was with Mrs. Corder, and not long before she died, in writing to Jeffrey on two different occasions, she told him that she expected to be able to work again pretty soon and then she would return to the farm.

There was evidence tending to prove that she had the use of her mental faculties during all this time, and was capable of transacting business matters, at least those of minor importance and of an ordinary and simple character, but the circumstances, of which we have mentioned a few, as disclosed in the evidence, indicate that she had no fixed purpose as to the final disposition of the prop-

erty; her likes and dislikes were momentary, and not based upon an understanding and consideration of actual conditions; that her son Jeffrey was not only willing, but extremely anxious to obtain the property without consideration and to the exclusion of his brother and sisters, and that it was very easy for him to take advantage of his mother's condition, and cause her to do that which was not her own desire, but his alone.

From all the evidence, we conclude that the defendant, Jeffrey W. Winslow, has not produced sufficient evidence to overcome the presumption against the validity of the deed which arises from the circumstances surrounding its execution, and cannot find from all the evidence that he paid any valuable consideration therefor. We therefore conclude that the judgment of the district court is right, and it is

AFFIRMED.