DONALD H. CLARK, APPELLANT, V. S. AGNES HOLMES, APPELLEE.

FILED NOVEMBER 13, 1922.   No. 22127.

1. **Deeds:** CANCELATION: MENTAL CAPACITY: BURDEN OF PROOF. "Where it is sought to cancel a deed for the want of mental capacity of the grantor to make the instrument, the burden of proof is on the one who alleges the mental incapacity." *Brugman v. Brugman,* 93 Neb. 408, followed.

2 ———: ———: UNDUE INFLUENCE. The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor.

3. ——: DELIVERY: PROOF. The possession of a deed by the grantee is *prima facie* evidence of its delivery.

4. ——: CANCELATION: INSUFFICIENCY OF EVIDENCE. Evidence examined, and *held* insufficient to show mental incapacity of the grantor to execute the deeds, or undue influence exercised by the grantee, or that the deeds were never delivered.

APPEAL from the district court for Nuckolls county: RALPH D. BROWN, JUDGE. *Affirmed.*

*H. H. Mauck* and *F. H. Stubbs,* for appellant.

*Hayes & Hayes* and *T. W. Cole, contra.*

Heard before MORRISSEY, C. J., ALDRICH, DAY and FLANSBURG, JJ., REDICK and SHEPHERD, District Judges.

DAY, J.

Action by Donald H. Clark against S. Agnes Holmes to cancel two certain deeds, each for a quarter section of land in Nuckolls county, which were executed by Marcella F. Adams to S. Agnes Holmes on March 28, 1917. The trial resulted in findings and judgment for the defendant. Plaintiff appeals.

The plaintiff bases his right to recover the lands in question by virtue of the last will and testament of Marcella F. Adams duly admitted to probate, which by its terms devised all of the real and personal property of the testatrix to the plaintiff. The will was dated November 25, 1914. The testatrix died December 8, 1917. The testatrix was the aunt of both plaintiff and defendant, they being cousins.

It is the contention of the plaintiff that the deeds above mentioned are void and of no effect for three reasons: First, that the grantor at the time of making and executing the deeds was mentally incapable of transacting business, and did not comprehend the nature and import of her act when she signed said deeds; second, that the defendant, by means of overpersuasion and undue influence and by false and fraudulent acts and statements

made with the intent to prejudice the failing mind of the grantor, stated and caused to be represented to her that the plaintiff had married, or was about to marry, a certain named woman; third, that the deeds were never delivered.

Upon the question of the mental capacity of the grantor at and about the time the deeds were executed, the testimony is, as is usual in this class of cases, somewhat conflicting. The plaintiff, as well as three servants employed by him in the house, testified that beginning in the fall of 1916, and thereafter until the time of her death, the grantor was in a very weak physical and mental condition; that her actions and speech indicated that she was losing her mind; that at times she would talk incoherently, would imagine that some of her friends and relatives long since deceased were present in the room with her, and with whom she would attempt to converse, and when told that they were not there she would insist that she just saw them; that she would arise from her bed and walk out of the house clothed only in her night-dress; that she would order medicine prepared for her and then decline to take it, insisting that she never ordered it; that practically all of the time she was confined to her room by her sickness, and was under the care of a physician and a nurse. The plaintiff was of the opinion, based upon his observations of her conduct and manner, that she was not competent to make the deeds.

Another witness on behalf of the plaintiff gave it as his opinion that the grantor had not sufficient capacity to make the deeds, but his opportunities for seeing the grantor were very limited; and the force of his opinion is very much weakened by the fact that a short time after the execution of the deeds in question he accepted a deed from her as grantor.

Opposed to this line of testimony, the grantor's physician, as well as a large number of her friends, testified that, while she was suffering from physical ailments, her

mind was bright and active; that she would inquire about her business affairs; would pay her debts; read the morning papers, or have them read to her; and that she manifested a general interest in what was transpiring; that on one occasion she asked the doctor to give her a statement of his bill, which he did, and she thereupon wrote and gave him a check for $109.

All agree that she was a woman of unusual attainments. Some of the witnesses testified that during her sickness she directed the servants in the household in regard to the meals, and when it was reported to her that some purchases were needed she would give them money with directions to purchase articles about the house. A number of women testified that she was able to go out on the porch during most of the period. The witnesses to the deed testified that they noticed nothing unusual in her mental condition at the time, although stating, however, that she said but little.

In addition to the testimony of the witnesses detailing her actions and speech, during a period both before and after the execution of the deeds, a number of letters (nine in number) written by the grantor are in evidence, extending over a period from February 28, 1917, to November 9, 1917. These letters are such as an old lady would ordinarily write to a niece. They tell of her physical condition, what the doctor says about her, and family matters. There is nothing in the letters that would strike one as singular or out of the ordinary, except the statement in one that "confederate money is worth nothing."

The testimony upon this branch of the case covers a great many pages of the record, and it would be impossible to give even a summary of it without extending this opinion to an unwarranted length; and we must content ourselves with the mere brief statement as above outlined. The plaintiff having alleged the incapacity of the grantor to make the deeds, the burden was upon him to establish such fact. This he has not done. Our con-

clusion of the record upon this branch of the case is that it falls very much short of proof of a lack of mental capacity to make the deeds. The rule of law is settled that, to set aside a deed on the ground of want of mental capacity on the part of the grantor, it must be established that the mind of the grantor was so weak and unbalanced at the time of the execution of the deed that he would not understand the purport of what he was then doing. *Schley v. Horan*, 82 Neb. 704; *West v. West*, 84 Neb. 169.

With respect to the claim of the plaintiff that the deed was procured by undue influence, the testimony in that behalf fails to convince us that any improper method was employed by the defendant or any one for her in securing the deeds. The plaintiff's claim in this behalf is that the defendant had told her aunt, for the purpose of prejudicing her mind against the plaintiff, that he, the plaintiff, was about to marry, or had married, a certain lady against whom the aunt entertained some dislike. There was no competent testimony whatever supporting this claim. The only testimony upon this subject was given by one of the nurses who never knew Mrs. Adams until some eight months after the deeds were executed. She testified that Mrs. Adams had told her that Miss Holmes had stated to Mrs. Adams that the plaintiff was about to marry, or had married, a certain lady in the city. It is clear that this testimony was hearsay. Besides this, there is no connection between the remark and the execution of the deeds. Conceding that the statement was made, we cannot presume that it was made as an inducement to the execution of the deeds. It is shown that the defendant was in Georgia visiting her aunt at the time the deeds were made, but this circumstance alone casts no suspicion upon their validity. The defendant was reared in the home of the grantor from her earliest infancy; was educated by the grantor; and *it is not at all improbable that under those circumstances a friendly*

feeling existed between the aunt and her niece. That the aunt desired to assist her niece is also probable on account of the fact that the niece had been a school teacher for 24 years; she was a maiden lady, while her nephew (the plaintiff), with whom she was on most cordial relationship, having lived in his home for a number of years, was a lawyer, 62 years old, and enjoying a lucrative practice in the state of Georgia.

Lastly, it is claimed that the deeds are void because they were never delivered. The testimony shows that at the time the deeds were executed they were left in the possession of the grantor; that at that time the defendant was living in the house; but, owing to the rule of evidence that transactions and conversations between persons and the representatives of a deceased person are excluded, we are deprived of the defendant's version as to how and when she became possessed of the deeds. Competent testimony is before us, however, that some months after the deeds were executed they were in the possession of the defendant in the state of Maine; and upon the advice of one of her friends she sent them to Nuckolls county, Nebraska, for record, and they were duly recorded about a month before the death of the grantor. The rule of law is settled that the mere possession of a deed by the grantee is *prima facie* evidence of its delivery. This being shown, it was incumbent upon the plaintiff to overcome the *prima facie* case thus made out. This he did not do. We are clearly of the opinion that the plaintiff has utterly failed in his attack upon the validity of the deeds, and that the judgment of the district court is sustained by the record.

The judgment is

AFFIRMED.