LEVI J. HITCHCOCK, EXECUTOR, ET AL., APPELLANTS AND
CROSS-APPELLEES, V. HARRY GUILLIAMS, APPELLEE AND
CROSS-APPELLANT: DELLA GUILLIAMS, APPELLEE.

FILED APRIL 9, 1926. No. 23754.

1. **Deeds:** CANCELATION: MENTAL CAPACITY: BURDEN OF PROOF.
"Where it is sought to cancel a deed for the want of mental
capacity of the grantor to make the instrument, the burden of
proof is on the one who alleges the mental incapacity." *Brugman v. Brugman,* 93 Neb. 408.

2. ——: ——: UNDUE INFLUENCE. "The undue influence
which will avoid a deed is an unlawful or fraudulent influence
which controls the will of the grantor." *Clark v. Holmes,* 109
Neb. 213.

3. **Evidence** examined, and found to amply sustain the decree of
the district court.

APPEAL from the district court for Richardson county:
JOHN B. RAPER, JUDGE. *Affirmed.*

*Reavis & Beghtol,* for appellants.

*Neal & Hawxby* and *John Wiltse, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

THOMPSON, J.

This suit is one commenced in the district court for Richardson county by the executor of the estate of Eliza S. Clark, late of such county, and her nephews and nieces and grand nephew and niece, each of the state of New York, they being her sole heirs, appellants, hereinafter called plaintiffs, to have canceled and set aside a deed in usual form purporting to convey to the defendant Harry Guilliams, one of the appellees, hereinafter called the defendant, an 80 acres of land in such county, the petition alleging as grounds therefor, in apt language, lack of consideration, mental incapacity on the part of the grantor, said Eliza S. Clark; further, that such deed was caused to be made and delivered by and through the undue influence of de-

Hitchcock v. Guilliams.

fendants. And, as an additional cause of action, it was alleged that defendant Harry Guilliams had, without authority from Eliza S. Clark, obtained and converted to his own use a $500 certificate of deposit, of that value, and prayed judgment against him for that amount with interest. Defendants filed answer admitting all but the three challenges to the deed and the second count, to each of which they interposed a denial, and alleged affirmatively, in substance, that the deed was executed for a valid consideration, to wit, for $1, past services of the defendants for grantor, and love and affection held by her for them; and that such deed was her free and voluntary act. To this plaintiffs interposed a general denial. Trial to court, judgment for defendants as to deed, and judgment for plaintiffs as to the certificate. Plaintiffs appeal, and defendant Harry Guilliams cross-appeals. Defendant seeks reversal on the ground that the judgment against him is not supported by the evidence. The plaintiffs seek reversal for the reasons that the evidence is insufficient to warrant the decree sustaining the deed, and for errors of law occurring during the trial, each thereof being separately and aptly set forth.

Taking up the cross-appeal of defendant, the evidence does not show authority on the part of the defendant to possess himself of the certificate or to negotiate the same. Nor does the record disclose facts showing that a confidential relation existed between Mrs. Clark and Guilliams, either as to the certificate, or any other of her business, or property from which such authority might be inferred.

There is some evidence of an inquiry having been made of Dr. Boose, who had received this certificate from defendant Guilliams, when Boose's claim against Mrs. Clark's estate was being considered in the county court. However, the answer does not aver an adjudication by such court of the question involved, and neither does the record reflect proof warranting the conclusion that such an adjudication had been had.

Plaintiffs' challenge to the findings and judgment of the trial court presents for our consideration largely questions

of fact. We have, with much care, read the entire record, together with the very able and helpful briefs furnished.

The deed in question was made in accordance with the requirements of the law of our state. While it is true that Mrs. Clark was at the time of the execution and delivery of such deed near 84 years of age, and somewhat handicapped by reason of a second stroke of paralysis, however, she could and did by signs as well as by words make herself understood, and did suggest to and direct others as to what she wanted done; and, as we find, was of sound mind and memory, mental faculties alert, and able to grasp the transaction in its fullness. She was then, as before and after, an exceptionally farseeing, calculating woman, possessed of an unusual grasp of business and business methods applicable to her calling, that of a farmer's wife and farmer. She had successfully conducted her own business by direction and otherwise ever since her husband's death in 1897. She knew her property and the extent thereof, its value and its practical uses, and the disposition she desired to make of it. She at the time also knew and appreciated her relationship to others, both those arising from blood connection as well as those arising out of friendship. She knew her condition as to health, that her time here at best was short. With this in mind, the Saturday afternoon previous she had called around her some few of her friends, and divided her personal belongings, and delivered thereof to those present, and of others thereof she ordered them labeled and directed that these be delivered, and, at the same time remarked that she "intended to give away all that she had," not disposed of by her will, as we conclude from the evidence. This will was holographic, was executed in 1920, and from it this 80-acre tract was by Mrs. Clark intentionally not included. In this will each of the plaintiffs, save the executor, was in a substantial way remembered. Mrs. Clark died June 5, 1922, and on July 5, 1922, her will was duly admitted to probate, without contest. This was prior to the commencement of the present action.

On Sunday following the aforementioned Saturday dis-

tribution of personal belongings, the deed in question, which Mrs. Clark had ordered prepared by disinterested parties, was presented and read to her, and was by her signed, acknowledged and delivered. This transaction is in perfect harmony with her then wish and also oft-expressed intent both before and after the execution and delivery of such deed. While there is some evidence which tends to show incapacity, taking the evidence as a whole, it strongly preponderates in favor of the findings and judgment of the trial court. The burden as to the lack of mentality on the part of the grantor at the time she executed and delivered the deed in question is on the plaintiff to both allege and prove. *Brugman v. Brugman*, 93 Neb. 408. This burden as to proof plaintiffs failed to meet. As we said in *Brugman v. Brugman, supra:*

"In determining the mental capacity of the grantor to execute a deed, if it clearly appears that when the instrument was executed the grantor had the capacity to understand what he was doing, knew the nature and extent of his property, and what he proposed to do with it, and to decide intelligently whether or not he desired to make the conveyance, it cannot be said that he was incompetent or incapable of executing the instrument."

As to undue influence: "The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor." *Clark v. Holmes,* 109 Neb. 213. This record is without any evidence bringing this suit within the above rule. As before stated, her mind was clear and unconfused; she knew what she was doing and did it with her own free and voluntary will, at all times directing the transaction. She recovered to the extent of being able to be up and around the premises, talked with the leading contestant, after he knew of the execution, delivery and the recording of the deed. He never mentioned the fact of such knowledge to her, though he had ample opportunity to do so. He and others of the nephews settled a contention of long standing with her involving the ordinary unpaid tax and drainage assessment on the 80

acres on which she lived, in which she held a life estate by reason of the provision of a will of her deceased husband. The nephews insisted that she pay not only the ordinary tax on the land, but also a part of the drainage tax. She contended that, as the drainage tax went to the betterment of the freehold, which they would soon get possession of, that was for them to pay, and she the ordinary tax which, she claimed, was what she could be required to pay. This was as she had always contended. The matter was thus adjusted, her will controlling. The record is replete with facts showing this strength of mind and self-reliance, both on the date of the execution of such deed and at all other times. While the Guilliams were her close friends and attended to her little needs, she at all times directed and controlled her own business affairs, without even an attempted interference on their part.

As to the claimed errors of law occurring at the trial, concerning the admission of, and refusing to strike out, what is challenged as incompetent evidence, which plaintiffs cite for our consideration, we find it sufficient to say: The suit is one triable to the court without a jury, and is here for our determination *de novo*, and as we find, without considering the evidence thus involved, there is ample competent evidence to support the judgment of the district court, and our conclusion herein, it becomes unnecessary for us to further consider such challenges.

The judgment of the district court is, in all things,

AFFIRMED.