GEORGE KELLNER, APPELLANT, v. LAURA B. WHALEY, ET AL., APPELLEES.

27 N. W. 2d 183

Filed April 18, 1947. No. 32138.

*Alfred D. Raun* and *Van Pelt, Marti & O'Gara*, for appellant.

*Mark J. Ryan* and *A. P. Coleman*, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action brought by appellant, George Kellner, against the appellees to cancel two deeds to certain lands in Thurston County. The trial court found against appellant, dismissed his petition, and quieted title to the lands in appellees Laura B. Whaley and Lela E. Kilzer, sisters of the appellant. From this order appellant has appealed.

George Kellner, Laura B. Whaley, and Lela E. Kilzer are the sole and only heirs at law of Edward J. Kellner, single, who departed this life December 4, 1944.

For convenience, we will hereinafter refer to Edward J. Kellner as Kellner.

It appears from the record that Kellner for a number of years prior to his death was the owner of the lands in question. On October 12, 1939, he instructed an

attorney to prepare two deeds conveying land to his sisters, Laura B. Whaley and Lela E. Kilzer. The deeds were prepared according to instructions, signed and acknowledged by Kellner, and he left the attorney's office with them in his possession. At the time of Kellner's death the deeds were in the possession of one of the grantees, Laura B. Whaley, and she gave them to her husband to take to the lawyer who had prepared them, so that he might have them recorded. The deeds were recorded December 13, 1944. Walter L. Whaley, husband of Laura B. Whaley, testified that he first saw the deeds in the fall of 1939, and the next time he saw them was after the death of Kellner. They were in his home where his wife had kept them in a box, and they were in a box there when Kellner died. From the time the deeds were signed and acknowledged, until his death, Kellner continued to live on the land, farm it, collect the rents and profits, and pay the taxes.

The evidence shows that a real estate dealer had a conversation with Kellner in the spring of 1943, with reference to selling his land. Kellner wanted $100 per acre and agreed orally to pay a commission of $400 to the real estate dealer if he sold the land. There were several conversations had between these parties about selling the farm, and the farm was shown to some parties but no sale was made. In the fore part of September 1944, one Harold Sandquist, who had been acquainted with Kellner for five or six years, and his brother Sherman had a conversation with Kellner at the latter's farm, with reference to purchasing the farm. Kellner wanted $100 per acre, and was offered $95, which he rejected on two or more occasions.

Due to illness, Kellner became a patient at a hospital in Homer, Nebraska. On Sunday, December 3, 1944, an acquaintance, Patrick Mahaney, called on him, and in a conversation Kellner told Mahaney that he had been offered $95 per acre, and he thought he would sell the farm and move to town. This was a day prior to

Kellner's death. On December 2, 1944, at Kellner's request, an attorney accompanied Kellner's brother-in-law, Walter L. Whaley, to the hospital where the attorney prepared defendant's exhibit 4 appearing in the record, a written instrument dated December 2, 1944, wherein it is stated that Kellner transferred all of his personal property of every kind and description, wherever located, to Walter Whaley as trustee for his two sisters, with instructions to divide the personal property in such manner that the two sisters would own all his property, both real and personal, in shares of equal value, without disturbing the deeds held by them to his real estate. This instrument was signed by Kellner in the presence of the attorney and notary as witnesses, and was properly acknowledged. The notary testified that exhibit 4 was read by the attorney to Kellner, and Kellner signed it. He was asked if that was what he wanted, and he replied that it was. The instrument was then acknowledged and handed to the attorney.

The appellant offered certain testimony of the appellees taken in a deposition in the matter of the estate of Edward Kellner, deceased, in the county court of Thurston County, as admissions against interest, to which objections were made and overruled. This evidence is to the effect that there would have been no objection on the part of the appellees to Kellner selling the land to Sandquist or anyone else; that the deeds would have been delivered back to Kellner if he had requested them, and in the event of purchase, two deeds would be required from the grantees to the purchaser; and that Lela E. Kilzer did not consider the real estate so deeded as her real estate, and profited only as lessee, receiving a share of the crops.

A witness acquainted with Kellner and who had farmed a part of his land on crop shares in 1942 and 1943, and worked for him a part of 1944, testified to conversations in which Kellner told him he had made

and delivered his deeds to his sister, Laura B. Whaley, wanted his property divided equally between the two sisters when he was through with it, and did not want his brother to have any of his property.

It appears from the evidence that Lela E. Kilzer did not see or have possession of the deed made to her by Kellner until after the same had been recorded. She did not testify.

There is also in the record a deed, plaintiff's exhibit 3, from Kellner as grantor, to Walter L. Whaley and Laura B. Whaley as joint tenants, to 40 acres of the land here involved, dated May 13, 1944. This 40 acres of land also appears in the deed made by Kellner as grantor to Laura B. Whaley, dated October 12, 1939. It appears by the appellees' answer that prior to 1939, Laura B. Whaley and her husband owned the 40 acres evidenced by plaintiff's exhibit 3, and conveyed the same to Kellner prior to 1939, as security for a debt, and the 40 acres was reconveyed to the Whaleys when the indebtedness was paid, as agreed between the parties. The reply denies the allegations of the answer.

The foregoing constitutes an outline of the competent and material evidence upon which the court based its judgment.

This court has, from an early date, consistently held that delivery is largely a question of intent to be determined from the facts and circumstances of the given case.

In the case of Brittain v. Work, 13 Neb. 347, 14 N. W. 421, it was stated: "No particular act or form of words is necessary to constitute a delivery of a deed. Anything done by the grantor from which it is apparent that a delivery was intended, either by words or acts, or both combined, is sufficient." Other cases in point are: Brown v. Westerfield, 47 Neb. 399, 66 N. W. 439; Roepke v. Nutzmann, 95 Neb. 589, 146 N. W. 939; Flannery v. Flannery, 99 Neb. 557, 156 N. W. 1065; Ehlers v. Seip, 136 Neb. 722, 287 N. W. 202; Owens

v. Reed, 141 Neb. 796, 4 N. W. 2d 914; Smith v. Black, 143 Neb. 244, 9 N. W. 2d 193.

"Delivery of a written instrument like a deed is largely a question of intent to be determined by the facts and circumstances of the case. In the case at bar it depends on whether the intention of the grantor at the time was that the deed should operate as a muniment of title to take effect presently. * * * If such was the purpose, the delivery was complete, and the title to the property passed." Brown v. Westerfield, *supra*. To the same effect is Roepke v. Nutzmann, *supra*, and Smith v. Black, *supra*.

The law is well established in this jurisdiction that: "The possession of a deed by the grantee, in the absence of opposing circumstances, is prima facie evidence of delivery, and the burden of proof is on him who disputes this presumption." Roberts v. Swearingen, 8 Neb. 363. See, also, Brittain v. Work, *supra;* Nelson v. Wickham, 86 Neb. 46, 124 N. W. 908; Ladman v. Ladman, 130 Neb. 913, 267 N. W. 188; 10 R. C. L., Evidence, § 48, p. 898. Such a presumption exists in favor of a grantee who is unable to explain how he came into possession of the deed because disqualified from testifying on account of the death of the grantor. See Clark v. Holmes, 109 Neb. 213, 190 N. W. 493.

However, the appellant asserts that there are existing opposing circumstances which show that the deeds were not delivered. This is based on the evidence adduced at the trial as follows: Kellner resided on the premises from the time he signed and executed the deeds in question until his death, collected the rents and profits therefrom, farmed the land, and paid the taxes; he endeavored to negotiate a sale of the premises, and was the owner of the record title at the time of his death. In May 1944 he conveyed a 40 acre tract of land described in the deed dated October 12, 1939, to his sister, Laura B. Whaley, and her husband. Also,

the admissions against interest disclose that the deeds were capable of being recalled.

Appellant cites 16 Am. Jur., Deeds, § 133, p. 513: "The facts that the grantor continues to exercise acts of ownership and authority over the premises, such as the collection of rents and profits, and that he also sells a portion thereof and proposes to sell the remainder are inconsistent with the theory of an intentional delivery, operative and effectual to pass title."

The appellant contends that the cases of Flannery v. Flannery, *supra;* Owens v. Reed, *supra;* Lewis v. Marker, 145 Neb. 763, 18 N. W. 2d 210; and Shults v. Shults, 159 Ill. 654, 43 N. E. 800, are controlling under the facts and circumstances of the instant case. A careful reading of the foregoing cases and others cited by the appellant involving the same principle, discloses the distinction between such cases and the case at bar.

In Flannery v. Flannery, *supra,* the deeds were kept in a tin box in the grantor's bedroom and under his control until his death. During his lifetime he made it clear he intended to control the real estate. as long as he lived, and expressed a purpose to change the deeds. There was no manual delivery or expressed intention to make one.

Owens v. Reed, *supra,* was a suit to quiet title to certain real estate claimed by the plaintiff under a deed executed by her brother and placed on record after his death. The defendant claimed under a residuary clause in the will, she having married George Reed, the plaintiff's brother, subsequent to the date of the execution of the deed. The plaintiff was a co-renter of a safe-deposit box with her brother. The brother retained control of the real estate during his lifetime, and exercised complete dominion over it. The plaintiff had no occasion to use the box as a corenter and did not do so. The deeds were found in the safe-deposit box upon the death of the brother. The placing of the deeds in the safe-deposit box was not of itself

a delivery. The fact was, the safe-deposit box was used only by George Reed, and the rent thereof was paid by him. There was no delivery of the deed under such circumstances.

In the case of Lewis v. Marker, *supra,* Mrs. Elizabeth May died August 23, 1936, leaving as her sole heir her 16-year old daughter, the plaintiff. The defendant was appointed plaintiff's guardian. Prior to her resignation as guardian, she placed on record the deed in question, which she found in a safe-deposit box during the latter part of May or the first part of June 1938. The safe-deposit box was leased by Elizabeth May and the defendant, and each had access to it. The evidence showed that Elizabeth May did not use the box from the date of the execution of the deed to the date of her death. The fact that the deed was found in the safe-deposit box was not of itself sufficient to sustain the finding that there was a delivery of the deed in the lifetime of Elizabeth May. There was evidence that Elizabeth May intended to convey the residence to the defendant because of the minor daughter, and her belief that the defendant could better handle the property and care for the child. Under the circumstances, it was held that there was no delivery of the deed.

The facts in the other cases cited by appellant on the same principle clearly disclose that there was no intention on the part of the grantor shown that would constitute a delivery of the deed or deeds in such cases.

The essential fact to render delivery effectual always is that the deed itself has left the control of the grantor who has reserved no right to recall it, and it has passed to the grantee. The deeds in the instant case, and there is no evidence to the contrary, were in the possession of the grantee, Laura B. Whaley, prior to the time of the grantor's death, and at the time of his death. The distinction between the cited cases and the instant case is therefore obvious.

We believe the following cases are pertinent to a determination of this appeal.

"A deed, delivered to grantee in grantor's lifetime, is operative, though enjoyment of estate conveyed is postponed until grantor's death, as present estate or interest is transferred by such delivery.

"In suit to set aside deed to defendants for want of delivery, plaintiffs had burden of proving nondelivery of deed and producing evidence to overcome presumption of delivery due to defendants'· possession of deed." Klatt v. Wolff, (Mo.) 173 S. W. 2d 933. See, also, Rohr v. Alexander, 57 Kan. 381, 46 P. 699; Zumwalt v. Forbis, 349 Mo. 752, 163 S. W. 2d 574; 16 Am. Jur., Deeds, § 372, p. 650; 26 C. J. S., Deeds, §§ 183, 184, pp. 591 to 595.·

Zumwalt v. Forbis, *supra,* held: "The fact that the deed was not recorded until after the grantor's death is not of itself sufficient to show nondelivery."

In the case of McGee v. Allison, 94 Ia. 527, 63 N. W. 322, which is somewhat similar to the case at bar, the court held: "The fact that a grantee kept a deed without recording for a number of years, allowed the grantors to remain in possession, and made no claims to the property until after their deaths,· does not alter the presumption of a delivery, when the deed, fully executed, is in his possession."

Further in the opinion it is said: "It is well settled, however, that, if a deed fully executed is found in the possession of the grantee, it is presumed to have been delivered by the grantor, and accepted by the grantee, at the date of its execution. Wolverton v. Collins, 34 Iowa, 239; Craven v. Winter, 38 Iowa, 480. This presumption is not conclusive, but it raises a strong implication, which can only be overcome by clear and satisfactory proof. Tunison v. Chamberlain, 88 Ill. 379. Such a rule is necessary to the security of titles. Any other would render all holdings uncertain, and would be disastrous in the extreme. * * *

"The testimony most relied upon to show there was

no delivery is * * * the admission of Lawrence Allison (grantee) that he did not take possession of the property, record his deed, or exercise any acts of ownership over the lot except to hold the deed until after the death of Mr. and Mrs. McHenry (the grantors); * * *. With reference to this first-mentioned testimony, the defendant has offered an explanation which is entirely consistent with his claim that he owned the property at all times after the deed was executed. Mrs. McHenry was his sister, and it is not unreasonable to suppose that because of this relationship he allowed her and her husband to remain in possession of the property after he became the owner of it; and the fact that she remained in possession, paid taxes, and made repairs thereon is not of itself, under the circumstances disclosed, inconsistent with the claim that she parted with her interest in it by a deed to her brother."

In the case of Cox v. McLean, 66 N. D. 696, 268 N. W. 686, it is said: "This deed came into the possession of the grantee at some time. There is no claim of duress, undue influence, or fraud in obtaining the deed. Before the presumption that a deed in the possession of the grantee was delivered to and accepted by the grantee is *ovrcome,* there must be evidence to rebut the presumption and this must be clear and convincing. * * * It is not overcome because of failure to record."

It is also said in this opinion: "Therefore, the presumption arises in favor of the defendant that she is the owner of this deed as it was in her possession for years before the death of the grantor, and also that it was delivered to her on the day of date. * * * failure to record until after the death of the grantor, or failure to take possession until after the death of the grantor, does not destroy the effect of testimony showing delivery." See, also, Cale v. Way, 46 N. D. 558, 179 N. W. 921; Rohr v. Alexander, *supra.*

Applying the language in McGee v. Allison, *supra,* to the instant case, under the circumstances disclosed

there is nothing inconsistent with the claim that the brother parted with his interest in the real estate by deeds to his sisters.

We have heretofore set out a summary of the evidence of Laura B. Whaley, Walter L. Whaley, and Lela E. Kilzer contained in a deposition which appellant contends constitutes admissions against interest.

In Smith v. Black, *supra,* this court said: "The criterion upon which the question of delivery depends is as to whether or not the intention of the grantor is that the deed shall operate as a muniment of title to take effect presently, or in other words, whether or not it has passed beyond the dominion, control and authority of the maker, and is no longer capable of being recalled."

It is the appellant's contention that the testimony with reference to the admissions against interest discloses that the deeds in question were capable of being recalled.

" 'Admissions' in the law of evidence are concessions or voluntary acknowledgments made by a party of the existence of certain facts." 31 C. J. S., Evidence, § 270, p. 1022.

Admissions against interest are defined as follows: "Any statement made by or attributable to a party to an action which constitutes an admission against his interest and tends to establish or disprove any material fact in the case is competent evidence against him." 31 C. J. S., Evidence, § 272, p. 1023.

"To be competent as an admission a statement must be one of fact, and a statement which is a mere opinion or conclusion or a conclusion of law is as a rule inadmissible." 31 C. J. S., Evidence, § 272, p. 1025.

"An admission should possess the same degree of certainty as would be required in the evidence which it represents, and hence mere conjectures or suggestions as to what might have happened if certain circumstances had not occurred are not competent; neither should an alleged admission be considered where the

subject matter to which it refers is left uncertain." 31 C. J. S., Evidence, § 277, p. 1029.

From an analysis of the alleged admissions against interest, it appears that for the most part they do not refer to an existing fact, do not possess the same degree of certainty as would be required in the evidence which the admission represents, and are conjectural. The facts are that from and after the date the deeds were prepared, signed, and acknowledged by the grantor, and for a period of five years or until his death, there is no evidence that he sought or desired to regain possession or control of the deeds. The offered testimony of admissions against interest, under the circumstances, are insufficient to show that the deeds in question were capable of being recalled. Further, defendant's exhibit 4, the substance of which is heretofore set out, discloses and affirms Kellner's intention that his sisters should own the real estate evidenced by the deeds, and that the same had been duly delivered to them.

The appellees offered certain of the alleged admissions against interest, contending under section 25-1202, R. S. 1943, that the appellant having introduced such evidence of a representative of a deceased person, then the appellees were privileged to introduce the testimony of such witnesses with reference to conversations and transactions had with the deceased person. The cases cited by appellees on this proposition of law need not be discussed. The testimony offered was primarily based on what might have happened, in the event the grantor in his lifetime sought to recall the deeds, a fact which never existed.

"A party claiming title under a deed made by a deceased person is an incompetent witness to prove the delivery of such deed." Wilson v. Wilson, 83 Neb. 562, 120 N. W. 147.

The objections to such evidence were properly sustained by the trial court.

The appellant predicates error on the admissibility

of testimony of one of the attorneys as to conversations and transactions which he had with decedent, contending that the testimony was privileged. The assignment of error is not discussed. However, the competent and material evidence appearing in the record sustains the appellees position in the case at bar. In considering a record de novo, we shall assume that the trial court disregarded all incompetent evidence. We have likewise, in determining this appeal from an independent investigation of the record, disregarded all incompetent evidence to which objection was timely made.

We conclude that the deeds in question were delivered to the appellees Laura B. Whaley and Lela E. Kilzer, and the judgment of the trial court should be, and is hereby, affirmed. .

AFFIRMED.