HANNAH COLBERT ET AL., APPELLANTS, v. CHARLES A. MILLER, JR., ET AL., APPELLEES.

32 N. W. 2d 500

Filed May 20, 1948. No. 32391.

*C. S. Wortman* and *Ralph M. Kryger*, for appellants.

*Leo M. Williams* and *Frederick M. Deutsch*, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

The appellants Hannah Colbert, Etta Elliott, and Kate Curtis, as plaintiffs, brought this action in the district court for Antelope County against the appellee Charles A. Miller, Jr., as defendant. The appellants' purpose in bringing the action is to quiet the title in themselves to 360 acres of land in Antelope County. From a decree in favor of the appellee, their motion for new trial having been overruled, the appellants have perfected this appeal.

The source from which all parties claim to have received their title is Charles A. Miller, Sr. Since he is now deceased he will herein be referred to as the deceased. The appellee, Charles A. Miller, Jr., is a nephew and the appellants are sisters of the deceased and will be herein referred to as appellee and appellants,

except when it is necessary to refer to the appellants individually. In such instances they will be referred to by their Christian names of Hannah, Etta, or Kate.

By their action the appellants seek to cancel a deed from the deceased to the appellee which is dated February 2, 1938, and was recorded August 1, 1944, to the lands that are herein involved and to quiet the title in themselves under and by virtue of either or both of the following: A deed from the deceased to themselves dated June 10, 1946, and recorded June 12, 1946, or the last will and testament of deceased dated June 10, 1946, which has been allowed and admitted to probate by the county court of Antelope County on March 17, 1947.

The first question presented is the validity of the deed from deceased to appellee dated February 2, 1938, for if this deed is valid then any question raised as to the validity of any subsequent deed or will of the deceased in favor of the appellants becomes immaterial as they would be inoperative insofar as the lands herein involved are concerned.

Insofar as appellants contend that the appellee's pleadings should be dismissed because of the defenses therein pleaded being inconsistent, we find the following principle is applicable thereto: "The rule is that more than one defense may be interposed to the same cause of action, provided they are not inconsistent with each other; they are not inconsistent unless the proof of one necessarily disproves the other. Blodgett v. McMurtry, 39 Neb. 210, 57 N. W. 985; People's Nat. Bank v Geisthardt, 55 Neb. 232, 75 N. W. 582; Hilmer v. Western Travelers Accident Ass'n, 86 Neb. 285, 125 N. W. 535; Ford & Isbell Lumber Co. v. Cady Lumber Co., 94 Neb. 87, 142 N. W. 300; Maier v Romatzki, 95 Neb. 76, 144 N. W. 1036; Schellpeper v. Sporn, 112 Neb. 192, 198 N. W. 1012." Tighe v. Interstate Transit Lines, 130 Neb. 5, 263 N. W. 483. We find no such inconsistencies therein.

The appellants contend the trial court erred in admitting incompetent evidence over their objections and in

excluding evidence and declarations of the deceased made by him long after the execution of both deeds involved herein and after he had any interest in the subject matter of this action. This assignment of error, in the form made, is subject to the following rule: "Our uniform holding has been that the assignment must point out and specify the particular evidence of which complaint is made before we will consider it." Tarpenning v. Knapp, 79 Neb. 62, 112 N. W. 290. See, also, Smith v. Western Union Telegraph Co., 80 Neb. 395, 114 N. W. 288.

Nevertheless, in considering the record we will, in determining whether any evidence received or offers of proof rejected, to which objections were made, are competent and to be considered by this court, apply the following principles:

Hearsay testimony is incompetent and, as stated in Shold v. Van Treeck, 88 Neb. 80, 128 N. W. 1134: "Hearsay testimony which is incompetent is not made admissible by reason of the death of the person who made the statement sought to be proved."

" 'Acts and declarations of the grantor subsequent to the time of the alleged delivery, in hostility to the deed, are incompetent as against the grantee. But acts and declarations in support thereof are admissible, because they are adverse to the interests of the only person who at the time has any interest in overthrowing such deed.' (Arnegaard v. Arnegaard, 7 N. D. 475, 75 N. W. 797, 41 L. R. A. 258.)" McDonald v. Miller, 73 N. D. 474, 16 N. W. 2d 270, 156 A. L. R. 1328. See, also, 31 C. J. S., Evidence, § 325, p. 1103; Pickworth v. Whitford, 228 Iowa 658, 293 N. W. 47; Kiser v. Sullivan, 106 Neb. 454, 184 N. W. 93; Johnson v. Petersen, 101 Neb. 504, 163 N. W. 869, 1 A. L. R. 1235; 2 Jones, Commentaries on Evidence (2d ed.), § 909, p. 1672; 20 Am. Jur., Evidence, § 605, p. 518.

As to any testimony of the appellants Kate and Etta and of the appellee relating to conversations or transactions had with the deceased, it was incompetent under

section 25-1202, R. S. 1943, unless the statutory disqualification was waived. See Holladay v. Rich, 93 Neb. 491, 140 N. W. 794; Haecker v. Haecker, 113 Neb. 587, 204 N. W. 72; Broeker v. Day, 124 Neb. 316, 246 N. W. 490; Fischer v. Wilhelm, 140 Neb. 448, 300 N. W. 350; Owens v. Reed, 141 Neb. 796, 4 N. W. 2d 914; Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183. Of course, this rule does not apply to the testimony of the other witnesses, if their testimony is otherwise admissible. See Dvorak v. Kucera, 130 Neb. 341, 264 N. W. 737.

In considering the record to determine the question of the validity of the deed to appellee, the following principles apply:

" 'Where the delivery of a deed is placed in issue, the burden of proof rests upon the party asserting delivery, * * *.' 18 C. J. 413." Ehlers v. Seip, 136 Neb. 722, 287 N. W. 202. But, as stated in Brittain v. Work, 13 Neb. 347, 14 N. W. 421: "No particular act or form of words is necessary to constitute a delivery of a deed. Anything done by the grantor from which it is apparent that a delivery was intended, either by words or acts, or both combined, is sufficient." See Brown v. Westerfield, 47 Neb. 399, 66 N. W. 439, 53 Am. S. R. 532; Flannery v. Flannery, 99 Neb. 557, 156 N. W. 1065; Ladman v. Ladman, 130 Neb. 913, 267 N. W. 188; and Kellner v. Whaley, *supra.*

However, as stated in Kellner v. Whaley, *supra:*

" 'It is well settled, however, that, if a deed fully executed is found in the possession of the grantee, it is presumed to have been delivered by the grantor, and accepted by the grantee, at the date of its execution. Wolverton v. Collins, 34 Iowa, 239; Craven v. Winter, 38 Iowa, 480. This presumption is not conclusive, but it raises a strong implication, which can only be overcome by clear and satisfactory proof. Tunison v. Chamberlain, 88 Ill. 379. (McGee v. Allison, 94 Iowa 527, 63 N. W. 322.)' "

In Kellner v. Whaley, *supra,* it is also said: " 'In suit

to set aside deed to defendants for want of delivery, plaintiffs had burden of proving nondelivery of deed and producing evidence to overcome presumption of delivery due to defendants' possession of deed.' Klatt v. Wolff, (Mo.) 173 S. W. 2d 933." See, also, Brittain v. Work, *supra;* Haecker v. Haecker, *supra;* and Ladman v. Ladman, *supra.*

As stated in Kellner v. Whaley, *supra,* quoting from McGee v. Allison, *supra:* " 'The fact that a grantee kept a deed without recording for a number of years, allowed the grantors to remain in possession, and made no claim to the property until after their deaths, does not alter the presumption of a delivery, when the deed, fully executed, is in his possession.' "

The record establishes that the deceased was born in Indiana; that his parents moved to Plattsmouth in Cass County, Nebraska, when he was four years of age; that he came to Antelope County about 1912 and rented the lands herein involved, which are described as the northwest quarter, the north half of the southwest quarter, the southeast quarter of the southwest quarter, and the south half of the southeast quarter, of Section 22, Township 28 North, Range 6 West, of the 6th P. M., in Antelope County, Nebraska; and that he moved thereon and farmed the same.

Appellee first worked for the deceased shortly after deceased moved to Antelope County. However, appellee married about 1914 and, although he continued to work for deceased for about a year, he thereafter started farming for himself. He farmed for about three years but after his marriage ended in divorce he ceased his farming operations. Thereafter, in about 1918, he returned to work for the deceased and has been living on this farm ever since. For a short time after his return in 1918 he worked for deceased but thereafter farmed the lands on a crop share basis.

Upon his return to the farm in 1918 he and the deceased, who never married, operated the farm together,

the appellee doing the farm work and the deceased the housework. They batched in this manner until April 1944. During all of these years the evidence shows their associations were very friendly and they had no difficulties. About 1921 the deceased became the owner of these lands.

On February 2, 1938, the deceased had a notary public from Brunswick come out to the farm and directed him to prepare a warranty deed to the land. This deed conveyed the lands to the appellee. At the same time there was an understanding entered into between deceased and the appellee whereby appellee was to give deceased a one-third share of all crops raised during the lifetime of the deceased. This deed the deceased executed, leaving it in the possession of the appellee with directions not to record it until after his death.

In the fore part of 1944, deceased, then being approximately 80 years of age, was advised by his doctor that because of the condition of his health he needed better care than their batching arrangements provided and was advised to move to a hotel. Consequently, the deceased, in April 1944, went to live at the hotel in Brunswick, his trading center and which is only about four miles from the farm. Thereafter the appellee frequently visited the deceased at the hotel and deceased occasionally went out to the farm. Their close friendly relations, which had existed since shortly after 1912, continued.

In the latter part of July 1944 two of the deceased's older sisters came to visit him. This came about as the result of a letter written to them by the lady who ran the hotel where deceased was staying. She advised them of his condition. It was while they were visiting the deceased, and apparently due to something that took place between them, that on August 1, 1944, the deceased asked appellee to come to the hotel at Brunswick, where he was then staying. When appellee arrived there deceased directed him to record the deed

to the land, which appellee had in his possession. This direction the appellee complied with and the deed was recorded on the same day.

We find the deceased's transfer of this land to appellee was his free act and voluntary deed and done at a time when he was fully possessed of his mental faculties and not the result of any fraud, undue influence, unfair advantage, or an overreaching of a confidential relation on the part of the appellee. It appears to have resulted from the desire of deceased to give this property to the one closest to him by long and friendly association.

Nor does the fact that deceased was to receive a share of the crops as long as he lived in any way affect the validity of this transfer, for, as stated in Kellner v. Whaley, *supra*: "'A deed, delivered to grantee in grantor's lifetime, is operative, though enjoyment of estate conveyed is postponed until grantor's death, as present estate or interest is transferred by such delivery. * * *.' Klatt v. Wolff, (Mo.) 173 S. W. 2d 933." The record shows that appellee has always paid this share.

After the deed was recorded the deceased continued to live in the hotel until October 1945. During this time his relations with appellee remained friendly. In October 1945 he visited a sister in Ashland and another in Kansas City. At this time deceased had three older sisters. Hannah lived at Ashland, Nebraska, and Etta and Kate lived in Kansas City, Missouri. After these visits it appears that deceased's attitude toward appellee changed. It is apparent that thereafter the deceased desired to undo what he had done by his deed of February 2, 1938, which gave these lands to the appellee. This is fully evidenced by his deed and will of June 10, 1946, seeking to give these lands to the appellants, and by many other acts. Just what caused this change, after his visits in October 1945, is quite apparent from the record but need not be here discussed for he could not then recall the transfer to the appellee,

which he had voluntarily made.

When he executed the deed on June 10, 1946, to the appellants it was without force and effect for he then had no interest in these lands which he could thereby convey. The same is true of the will, which became effective as of the date of his death on January 26, 1947, when he died in an old people's home in Lincoln, Nebraska, where he had been taken in December 1946 after being taken from the hotel in Brunswick to Ashland, Nebraska, on June 5, 1946.

We find the evidence to show that the deceased desired to and did voluntarily transfer the land herein involved to the appellee by his deed which he executed on February 2, 1938, and therefore the opinion of the trial court is correct and affirmed.

AFFIRMED.