JOHN L. HIPSLEY, ADMINISTRATOR WITH WILL ANNEXED OF THE ESTATE OF CAROLINE E. HIPSLEY, DECEASED, APPELLANT, V. SUSIE HIPSLEY, APPELLEE.

76 N. W. 2d 462

Filed April 27, 1956. No. 33876.

*Evans & Evans* and *L. H. Henderson,* for appellant.

*Johnson & Des Jardien,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought in the district court for Custer County by John L. Hipsley, administrator with the will annexed of the estate of Caroline E. Hipsley, deceased, as plaintiff, against Susie Hipsley, defendant. The purpose of the action is to obtain a declaratory judgment to the effect that the bequest and devise to Harry Hipsley, deceased, in the last will and testament of Caroline E. Hipsley, deceased, are invalid; that the real estate therein devised should descend under the intestate laws of this state to the heirs at law of Caroline E. Hipsley, deceased; that the deeds of conveyance referred to in paragraph 7 of said last will and

testament fail for lack of delivery; and that the title to the real estate set forth in paragraph 4 of the will be quieted and confirmed as against any claim of Susie Hipsley, in John L. Hipsley and Emma L. Henderson the only heirs at law of Caroline E. Hipsley, deceased.

The trial court entered judgment dismissing the plaintiff's amended petition; quieted title in Susie Hipsley, defendant, to the lands described in the deeds, holding that there had been a delivery of said deeds to the defendant's husband, Harry Hipsley, by Caroline E. Hipsley during her lifetime; and granted the defendant Susie Hipsley a homestead in certain land. The plaintiff filed a motion for new trial. Upon the overruling of this motion, the plaintiff appeals.

The following facts are admitted in the pleadings and are not in dispute in the record: That John L. Hipsley is the administrator with the will annexed of the estate of Caroline E. Hipsley; that under the terms of the last will of Caroline E. Hipsley, deceased, the following described real estate situated in Custer County was devised and bequeathed to Harry Hipsley, deceased, a son of Caroline E. Hipsley: The northwest quarter of Section 21, and the east half of Section 21, Township 19 North, Range 20, and Lots 3 and 4 and the south half of the northwest quarter of Section 4, Township 15 North, Range 23 West of the 6th P. M., in Custer County, and all of the southeast quarter of Block 1 in the original town of Broken Bow; that Harry Hipsley died on December 17, 1951, his sole and only heirs at law being his widow, Susie Hipsley, and his mother, Caroline E. Hipsley; that the only heirs at law of Caroline E. Hipsley, deceased, were John L. Hipsley, a son, and Emma L. Henderson, a daughter; that Caroline E. Hipsley, deceased, during her lifetime, executed deeds conveying the following real estate to Harry Hipsley, deceased: The east half of the southeast quarter of Block 1 of the original town of Broken Bow, the northwest quarter of Section 21, Township 19 North, Range

20 West of the 6th P. M., in Custer County, the east half of Section 21, Township 19 North, Range 20, Lots 3 and 4, and the south half of the northwest quarter of Section 4, Township 15 North, Range 23 West of the 6th P. M., and the west half of the southeast quarter of Block 1 in the original town of Broken Bow; and that paragraph 7 of the last will of Caroline E. Hipsley, deceased, states: "I have heretofore executed and delivered the deeds conveying to each of my children the lands I want each of them to have and receive."

The plaintiff's amended petition alleged that Caroline E. Hipsley, deceased, at no time during her lifetime made delivery of said deeds to her son Harry Hipsley, but at all times exercised absolute and exclusive control over said deeds of conveyance and over said real estate; that said deeds were in her possession on the day of her death, and were null and void for lack of delivery; that paragraph 7 of the will of Caroline E. Hipsley, deceased, in the language as stated previously, cast a cloud upon the title to the above described real estate; and that Susie Hipsley now claims an interest in and to said real estate by virtue of said deeds to Harry Hipsley and paragraph 7 of the last will of Caroline E. Hipsley, deceased.

The defendant's answer to the plaintiff's amended petition specifically denies the above as set forth therein. In addition, the answer alleges that Caroline E. Hipsley died on June 22, 1953, a resident of Custer County; that she left a last will which was duly admitted to probate in the county court of Custer County; that on September 26, 1940, Caroline E. Hipsley conveyed the east half of the southeast quarter of Block 1 of the original town of Broken Bow to Harry Hipsley; that on September 27, 1940, she conveyed the northwest quarter of Section 21, Township 19 North, Range 20 West of the 6th P. M., in Custer County to Harry Hipsley; that on June 20, 1947, she conveyed the east half of Section 21, Township 19 North, Range 20, Lots 3 and

4, and the south half of the northwest quarter of Section 4, Township 15 North, Range 23 West of the 6th P. M., and the west half of the southeast quarter of Block 1, in the original town of Broken Bow, to Harry Hipsley; that said deeds were delivered, and constituted a conveyance of the lands described therein; that the last will and testament of Caroline E. Hipsley acknowledges and verifies the execution and delivery of the said deeds and the conveyance of the said real estate to Harry Hipsley; that upon his death, the real estate hereinbefore described and previously conveyed to him by Caroline E. Hipsley, descended to and vested in his widow, Susie Hipsley, and his mother Caroline E. Hipsley in equal shares and proportion; that this answering defendant is entitled to have her share, interest, and title confirmed in her as the owner of an undivided half share and proportion thereof, and in addition is entitled to have set aside to her as a homestead and her right to the use, benefit, and income of the property described as follows:  All of the southeast quarter of Block 1 in the original town of Broken Bow, set aside for her use, benefit, and control; and that this answering defendant is entitled to a partition of said real estate in the manner provided for by law.  The prayer of the answer was in accordance with the allegations thereof.

The will of Caroline E. Hipsley, deceased, insofar as necessary to consider on this appeal, provides as follows:  The second paragraph provided that after the payment of such funeral expenses and debts, she gave and devised to her son, John L. Hipsley, the following described real estate:  The southeast quarter of Section 34, Township 18 North, Range 23, the northwest quarter of Section 9, and the north half of the southeast quarter and the northeast quarter of Section 16, Township 17 North, Range 22, except a parcel previously deeded to said John L. Hipsley and described as follows:  Commencing at the northwest corner of

the northeast quarter of Section 16, Township 17 North, Range 22, thence running east 40 rods on north line of said Section 16, thence south 80 rods, thence west 40 rods, thence north 80 rods to the place of beginning, containing about 20 acres, and the south half of the southwest quarter of Section 17, Township 17 North, Range 22, all west of the 6th P. M., in Custer County.

The third paragraph of the will gave and devised to her daughter, Emma Henderson, the following described real estate: The northeast quarter of Section 33, Township 17 North, Range 18, and the north half of the southwest quarter of Section 17, Township 17 North, Range 22, the southeast quarter of Section 8, and the northwest quarter and the west half of the northeast quarter, and west half of the southeast quarter of Section 17, Township 17 North, Range 22, all west of the 6th P. M., in Custer County, Nebraska, and the east half of the northeast quarter of Block 1 in the original town of Broken Bow.

The fourth paragraph of the will gave and devised to her son, Harry Hipsley, the following described real estate: The northwest quarter of Section 21, and the east half of Section 21, Township 19 North, Range 20, and Lots 3 and 4, and the south half of the northwest quarter of Section 4, Township 15 North, Range 23 West of the 6th P. M., in Custer County, and all of the southeast quarter of Block 1 in the original town of Broken Bow.

The fifth paragraph of the will relates to an intended devise of certain land to John L. Hipsley which was sold. The terms of the sale were stated therein and the amount received, and then John L. Hipsley was to receive the full purchase price received from the sale of the land by turning over to him certain War Savings Bonds and $800 evidenced by a note, or the proceeds therefrom if said note had been paid, in lieu of said land as described in this paragraph.

The sixth paragraph of the will provided that the

rest, remainder, and residue of the property owned by the testatrix at the time of her death was devised and bequeathed to her children, John L. Hipsley, Emma Henderson, and Harry Hipsley, share and share alike.

The seventh paragraph of the will provided: "I have heretofore executed and delivered deeds conveying to each of my children the lands I want each of them to have and receive."

This instrument was signed on July 21, 1949, witnessed by six witnesses, and was filed in the county court on March 31, 1954.

With reference to the deeds previously mentioned, the record discloses that J. G. Leonard, a bonded abstracter and notary public, on July 1, 1936, prepared and acknowledged for Caroline E. Hipsley a deed wherein John L. Hipsley was grantee. This land is described in exhibit 6, and was devised to John L. Hipsley in the second paragraph of the will of Caroline E. Hipsley.

On September 26, 1940, he prepared and acknowledged three deeds for Caroline E. Hipsley, referred to as exhibit 1, exhibit 4, and exhibit 8. In exhibit 1, Emma Henderson was named grantee, and the description of the land appears in paragraph 3 of the will of Caroline E. Hipsley wherein Emma Henderson is named devisee. John L. Hipsley is named grantee in exhibit 4, and the land described in that deed is devised to him under paragraph 2 of the will of Caroline E. Hipsley. Harry Hipsley was named grantee in the deed, exhibit 8, and by paragraph 4 of the will of Caroline E. Hipsley, was devised the same land which is described in such paragraph.

On September 27, 1940, Leonard prepared and acknowledged three more deeds for Caroline E. Hipsley, referred to as exhibit 2, exhibit 5, and exhibit 7. The grantee named in exhibit 2, a deed, was Emma Henderson. This land was devised to her by the third paragraph of the will of Caroline E. Hipsley. In exhibit 5, a deed, John L. Hipsley was named grantee. The land

described therein was devised to him by paragraph 2 of the will of Caroline E. Hipsley. In exhibit 7, a deed, Harry Hipsley was named grantee. This land was devised to him by paragraph 4 of the will of Caroline E. Hipsley.

Leonard's best recollection was that he went to the home of Caroline E. Hipsley and received from her the information necessary to draw the deeds made in 1940, and at a later date returned to her home where the deeds were signed and acknowledged by her. He believed that Harry Hipsley was present when Caroline E. Hipsley executed the deeds in 1940. John L. Hipsley and Emma Henderson were never present at any time when Caroline E. Hipsley executed the deeds.

On June 20, 1947, Leonard prepared and acknowledged two deeds for Caroline E. Hipsley, exhibit 3 and exhibit 9. The grantee named in exhibit 3 was Emma Henderson. The land described therein was devised to her by paragraph 3 of the will of Caroline E. Hipsley. In the other deed, exhibit 9, Harry Hipsley was named the grantee. The land described therein was devised to him by paragraph 4 of the will of Caroline E. Hipsley. When these two deeds were executed, Caroline E. Hipsley was a patient in the Broken Bow hospital under the care of Dr. Carothers. Leonard went to the hospital to obtain Caroline E. Hipsley's signature and acknowledgment of the deeds. He thought Harry Hipsley was present when these deeds were signed by Caroline E. Hipsley. He had no instructions or directions as to what to do with any of the deeds when they were executed. He left the deeds with Caroline E. Hipsley and had not seen any of the deeds since, until he was called as a witness. None of these deeds were ever filed for record in the office of the register of deeds.

The record further discloses that Caroline E. Hipsley was a resident of Broken Bow. Of her four children, only two outlived their parents, John L. Hipsley who has lived at Merna since 1917, and Emma Henderson who

resides in South Euclid, Ohio. After the death of her husband in 1929, Caroline E. Hipsley took over the management of the family property with the assistance of her daughter Bessie who lived with her. Bessie died on September 1, 1940. Harry Hipsley was a bachelor at the time of Bessie's death, and also lived in his mother's home. After Bessie's death, Harry Hipsley took over the management of the family property. On April 29, 1941, Harry Hipsley and Susie, the defendant, were married and he brought her to his mother's home where they lived when Harry Hipsley died on December 17, 1951. Susie continued to live in the same home and was living there at the time of trial. After Harry and Susie were married, Caroline E. Hipsley lived with them and paid $4 a week for board and room, occupying a first-floor room until she went to the hospital after breaking her hip on July 23, 1946. She was confined in the hospital until her death on June 22, 1953. Shortly after Bessie's death, Caroline E. Hipsley and her remaining children, John L. Hipsley, Emma L. Henderson, and Harry Hipsley, went to John L. Hipsley's home in Merna for a family conference with reference to a division of the property by the mother to her children. At that time the mother was 89 years of age. Conversation was had as to what should be done, resulting in Harry Hipsley being charged to attend to a great deal of the property, collecting the rents, accounting therefor, etc. Later on, deeds were made with reference to the property owned by Caroline E. Hipsley. Caroline E. Hipsley was desirous of having her children satisfied with reference to the division of the property. John L. Hipsley knew about his mother making out deeds shortly after it was done in 1940. Caroline E. Hipsley, during her lifetime, did not personally deliver the deeds evidenced by exhibits 1, 2, and 3 to Emma Henderson. The first time Emma Henderson saw the deeds was the night before her deposition was taken at her home in Ohio, on April 7, 1954. However, she did know that

some deeds were made out in 1940. Emma Henderson testified that the deeds evidenced by exhibits 1 to 9 were made in accordance with the conversation and agreement had at the family conference where plans were agreed upon with reference to the handling of the affairs or property of Caroline E. Hipsley. In accordance with this agreement, the accounts were to be kept in the names of Caroline E. Hipsley or Harry Hipsley, and Caroline E. Hipsley or John L. Hipsley. The income from the farms and mortgages was to be administered by John and Harry Hipsley. Pursuant to the plans so made, Harry Hipsley took care of the farms and property with the assistance of John Hipsley and Emma Henderson. Emma helped until December 1940. Both she and Harry deposited the money that came in for rent of the property to Caroline E. Hipsley's account.

The children agreed at the family conference that their mother, Caroline E. Hipsley, was to be taken care of during her lifetime and that the bills for her care and comfort were to be paid from the income of the property. It might be said at this time that the children of Caroline E. Hipsley never neglected her at any time, and she received the best of care and devotion that they could give her. The children saw their mother and visited her frequently, attending to her desires and wants. In other words, the family was a very substantial one.

John L. Hipsley testified that Harry Hipsley had been acting as agent and looking after the affairs of his mother until his death. His mother told him, after the family conference: "Now, I have got all the deeds made out and we made them out just the way you folks agreed."

The record discloses that from the accumulation of funds derived from the rents of the property and other sources, bonds were purchased in the names of Caroline E. Hipsley or John L. Hipsley, Caroline E. Hipsley or Emma Henderson, and Caroline E. Hipsley or Harry Hipsley. Suffice it is to say that all of these bonds were ac-

counted for and each of the children received the bonds allotted to them. This might also be said of the books of account kept by Harry Hipsley during his lifetime, wherein credits were made and shares shown of each of the children of Caroline E. Hipsley.

Some question arose with reference to the admissibility of certain accounts in evidence. We consider this of little importance in the light of the evidence relating to the important issues in this case.

After Harry Hipsley's death, Susie Hipsley filed a petition in the county court of Custer County praying for the appointment of John L. Hipsley as guardian of Caroline E. Hipsley, due to the fact that at that time she was 100 years of age, confined in a hospital, and unable to tend to her business affairs. Letters of guardianship were issued to John L. Hipsley on January 9, 1952. The inventory filed in the guardianship proceedings on April 9, 1952, shows the lands and the deeds to Harry Hipsley were listed therein as real estate in the possession of the guardian, belonging to the ward. After the death of Caroline E. Hipsley, the guardian filed his final report which shows the collection of rents from the lands, together with other income, amounting to $17,946.05, and payment of federal income tax in the amount of $1,570.94 on the rents collected by the guardian on the lands described in the deeds to Harry Hipsley, deceased. On June 30, 1953, a petition for final settlement was filed in the guardianship proceedings. On July 20, 1953, an order was entered by the county court approving the final report and petition for final settlement and discharging the guardian. Concurrently with the guardianship, the estate of Harry Hipsley, deceased, was being probated and administered by his widow, Susie Hipsley, and was fully concluded before the death of Caroline E. Hipsley. The inventory filed May 20, 1952, in this estate listed the real estate owned by Harry Hipsley at the time of his death. This exhibit lists the west half of the northeast quarter of Block 1, original

town of Broken Bow. It does not list the west half of the southeast quarter of Block 1, original town of Broken Bow described in the deed, where the widow and administratrix of the estate was then living. The inventory does not list the lands described in exhibit 7, exhibit 8, or exhibit 9. Final decree was entered in the Harry Hipsley estate on September 11, 1952. The county court did not find that Harry Hipsley died seized and possessed of the real estate described in the deeds, exhibits 7, 8, and 9. The court did not assess state inheritance tax against Susie Hipsley based on the value of the lands described in exhibits 7, 8, and 9, as shown by the decree. The court found that Caroline E. Hipsley inherited an undivided one-half interest in the real estate owned by her deceased son, Harry Hipsley.

Susie Hipsley filed a partition action against Caroline E. Hipsley on March 10, 1953, in the district court for Custer County, in which she alleged that Harry Hipsley died seized and possessed of the described real estate in her petition which did not include lands described in deeds exhibits 7, 8, and 9. Process was served on both Caroline E. Hipsley and John L. Hipsley, her guardian. On April 21, 1953, a judgment in partition was entered which did not include the lands described in exhibits 7, 8, and 9, and found Susie Hipsley, widow, and Caroline E. Hipsley, mother of Harry Hipsley, deceased, to be the owners of an undivided one-half interest each in and to the real estate holdings of the decedent, and appointed a referee to make partition. Confirmation of the sale of this real estate was entered June 3, 1953, prior to the death of Caroline E. Hipsley. Distribution of $24,280, proceeds of the sale, was not ordered until October 8, 1953, after the death of Caroline E. Hipsley. The administrator with will annexed of her estate received $11,135.50 as the distributive share due her estate after her death.

On June 23, 1953, petition for the appointment of an administrator of the estate of Caroline E. Hipsley

was filed in the county court of Custer County, and later when her last will was produced, petition to probate her will was filed July 14, 1953. The will was admitted to probate on August 3, 1953. On September 29, 1953, an inventory was filed, and supplemental inventory was filed on October 26, 1953, in this estate. All of the real estate described in the deeds, exhibits 1 to 9, was listed in the inventory.

An inheritance tax appraiser was appointed by the court, who found the value of this real estate to be $89,420, and the personal property of the estate to be $97,808.62. The total value of the estate amounted to $187,228.62. The Nebraska state inheritance tax and federal estate tax were determined and paid on the basis of this appraisement made of the estate.

Susie Hipsley testified that when she and Harry lived in Caroline E. Hipsley's home, Caroline E. Hipsley always kept a metal box, which is identified as exhibit 36, in a chest of drawers in her bedroom, and it remained in the same place for about a year after Caroline E. Hipsley went to the hospital. Harry Hipsley put this metal box in his trunk in the upstairs northeast bedroom of the house, and locked the trunk. Susie had never looked into this box during her husband's lifetime and did not know what papers were kept therein. The next morning after Harry Hipsley's death, she took the metal box from his trunk, brought it downstairs, put it in a cedar chest, and locked it up. On the evening of December 23, 1953, she called A. Paul Johnson, her attorney. He came to her home and she gave him this metal box. While her attorney was there, they looked into the box, and the bonds were in the box. The box had been locked and the key was tied on to its handle when she gave it to her attorney. She did not believe that there was anything in the box except the bonds. She further testified with reference to another metal box identified as exhibit 53, and that she saw this box after her husband's death in the closet

under the stairway. She was handed the deeds, exhibits 1 to 9, and was asked if she had ever seen them. She said: "I have." She had also seen the envelope in which they were contained, and had seen the same on Sunday night, December 23, 1951, when she and her attorney were conferring at her residence. These deeds were either in the box, exhibit 53, which belonged to her husband, or in another box which belonged to him and was in a vault at the bank. However, she believed exhibit 53 was the box where the deeds were contained, but she was not positive. The deeds were in the envelope designated exhibit 35 when she saw them. After she took the deeds out of either the box, exhibit 53, or the box at the bank, she gave the deeds, exhibits 1 to 9, and the envelope, exhibit 35, to her attorney. She never saw the metal box, exhibit 36, after she gave it to her attorney, until the time of the trial. When she gave the deeds, exhibits 1 to 9, and the envelope, exhibit 35, to her attorney, he placed the deeds and the envelope in which they were contained in his pocket, and left her place with the deeds in his pocket and the bonds in the metal box, exhibit 36. Her attorney delivered the bonds in the metal box, exhibit 36, and the deeds, exhibits 1 to 9, in the envelope, exhibit 35, to the Security State Bank of Broken Bow to be subject to the orders and direction of the court. The deeds and the box containing the bonds were delivered to John L. Hipsley upon presentation of letters of guardianship to the Security State Bank.

The vice president of the Security State Bank testified that a few days after Harry Hipsley's death, A. Paul Johnson, attorney, brought a box to the bank and requested the bank to keep it and turn it over only to a duly authorized person appointed by the court after guardianship proceedings had been instituted for that purpose. This witness put a tape on the box, exhibit 36, reading, "Mrs. Caroline Hipsley" to identify the box. The deeds were in the metal box, exhibit 36, when

Johnson brought the box to the bank for safekeeping. Johnson said on that morning, which was December 24, 1951, that he had notified John L. Hipsley that there were bonds and papers in the box for which Susie Hipsley did not want to be responsible, that they were being placed in the care of the Security State Bank, and that Susie Hipsley was filing a petition asking that John L. Hipsley be appointed his mother's guardian. All of these papers were in just one box, exhibit 36. This witness did not know what the box contained, but all that he delivered to John L. Hipsley was just the one box identified by the tape which the banker had put on it, reading "Mrs. Caroline Hipsley." He turned the box over to John L. Hipsley upon the presentation of the letters of guardianship. After John L. Hipsley received the box, exhibit 36, from the bank, he examined the contents and found the deeds contained therein.

Mrs. Anna McCormick, a practical nurse and a witness to the will of Caroline E. Hipsley, testified that she was employed to care for Caroline E. Hipsley on April 18, 1948, when she was in the hospital. A few days prior to the time Caroline E. Hipsley made her will, which was on July 21, 1949, this witness had a conversation with her. A. P. Johnson, Caroline E. Hipsley, and this witness were the only persons present at that time. She related the conversation as follows: "A. P. Johnson came in, and she said she wanted to make out a will, - that she had her deeds made out and delivered, - to be delivered, - delivered over to be delivered to her children, as she wanted them. So then she made out her will." On cross-examination she testified that she did not see the deeds, nor was she told by Caroline E. Hipsley to whom the deeds were to be delivered, or who was to deliver them. Caroline E. Hipsley said she had made out the deeds and delivered them. She did not say how they were to be delivered.

A granddaughter of Caroline E. Hipsley testified that she talked to her grandmother in 1940; and that her

grandmother told her: "She was going to make deeds to her property so that it would be divided up the way she wanted it. So that then, after her death, the deeds were to be delivered to the person to whom they were to go." She again talked to her grandmother in 1947, when she visited her in the hospital. At that time her grandmother told her she felt her property had been divided as equally as possible. The deeds had been made out to be delivered after she died, and she felt very relieved that it was done, as far as she was concerned. Her grandmother spoke of various pieces of property that different ones would have after her death. On cross-examination she testified that she could not state that her grandmother said exactly how the deeds were to be delivered after her death, that that would be her impression only.

There is other evidence in the record disclosing the manner in which Harry Hipsley handled the affairs of his mother's property until his death, and also the manner in which John L. Hipsley handled the property as guardian of his mother and in relation to his mother's estate. The evidence discloses that John L. Hipsley and his wife Lelah had visited Caroline E. Hipsley on numerous occasions, knew about the metal box, exhibit 36, had seen it on numerous occasions, and that Caroline E. Hipsley had showed them notes and other papers contained in the box in connection with her business that would require attention. There were no instructions with reference to delivery of the deeds on the envelop, exhibit 35, nor in the box, exhibit 36, when John L. Hipsley obtained possession of it.

We deem it unnecessary to summarize the evidence further, except that we may have occasion to refer to the evidence later in the opinion.

The plaintiff sets forth some 20 assignments of error. The assignments of error concerned in this appeal may be summarized as follows: That the trial court erred in holding that the deeds, exhibits 7, 8, and 9, had ever

been delivered to Harry Hipsley during the lifetime of the grantor, Caroline E. Hipsley; that the trial court erred in finding that the real estate here involved did not descend under the intestate laws of this state to the heirs at law of Caroline E. Hipsley, deceased; and that the judgment of the trial court is contrary to the evidence and the law.

The first proposition to determine is raised by the defendant who contends that the court should dismiss the action for declaratory judgment.

Section 25-21,152, R. R. S. 1943, provides in part: "Any person interested as or through an executor, administrator, trustee, guardian or * * * devisee, legatee, heir, next of kin, * * * of the estate of a decedent, * * * may have a declaration of rights or legal relation in respect thereto: * * * (c) To determine any question arising in the adminstration of the estate or trust, including questions of construction of wills and other writings."

We hold that the plaintiff was within his rights in bringing the type of action which he did.

There are certain well-established rules of law pertinent to this appeal which are as follows:

"It is the duty of this court in an equity case to try the issues de novo and to reach an independent decision without being influenced by the findings of the trial court except if the evidence is in irreconcilable conflict this court may consider that the trial court saw the witnesses, observed their manner of testifying, and accepted one version of the facts rather than the opposite." Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602.

Whether or not a deed has been delivered is largely a question of intent to be determined by the facts and circumstances of the particular case. Black v. Romig, 151 Neb. 61, 36 N. W. 2d 772; Brown v. Westerfield, 47 Neb. 399, 66 N. W. 439, 53 Am. S. R. 532; Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183; Milligan v. Milligan, 161 Neb. 499, 74 N. W. 2d 74.

No particular act or form of words is necessary to constitute a delivery of a deed. Anything done by the grantor from which it it apparent that a delivery was intended, either by words or acts, or both combined, is sufficient. Brown v. Westerfield, *supra*; Colbert v. Miller, 149 Neb. 749, 32 N. W. 2d 500.

It is said in Cerveny v. Cerveny, 154 Neb. 1, 46 N. W. 2d 632: " 'The possession of a deed by the grantee, in the absence of opposing circumstances, is prima fácie evidence of delivery, and the burden of proof is on him who disputes this presumption.' Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183.

" '* * * if a deed fully executed is found in the possession of the grantee, it is presumed to have been delivered by the grantor, and accepted by the grantee, at the date of its execution.' Colbert v. Miller, 149 Neb. 749, 32 N. W. 2d 500."

The prayer of the plaintiff's amended petition attacked the validity of the deeds for lack of delivery, but did not specifically pray that the deeds should be set aside. This is tantamount to a prayer to set aside the deeds.

In suit to set aside deed to defendant for want of delivery, plaintiff has the burden of proving nondelivery of deed and producing evidence to overcome presumption of delivery due to defendant's possession of deed. See, Kellner v. Whaley, *supra;* Colbert v. Miller, *supra.* This presumption is not conclusive, but it raises a strong implication, which can only be overcome by clear and satisfactory proof. Such a rule is necessary to the security of titles. Any other would render all holdings uncertain, and would be disastrous in the extreme. See, Cerveny v. Cerveny, *supra;* McGee v. Allison, 94 Iowa 527, 63 N. W. 322; Kellner v. Whaley, *supra;* Cain v. Killian, 156 Neb. 132, 54 N. W. 2d 368; Clark v. Holmes, 109 Neb. 213, 190 N. W. 493.

The fact that the deeds involved in the instant case were not recorded at the time of the death of the grantee, Harry Hipsley, is not of itself sufficient to show

nondelivery. See, Cain v. Killian, *supra;* Kellner v. Whaley, *supra.*

In the instant case the plaintiff asserts that the burden of proof is upon the defendant to establish the delivery of the deeds. The deeds were in the possession of Harry Hipsley. The presumption is that they were delivered, and such presumption continues until disproved by the plaintiff. Cerveny v. Cerveny, *supra;* Kellner v. Whaley, *supra;* Colbert v. Miller, *supra.* We are convinced that the burden of proof is upon the plaintiff to prove the nondelivery of the deeds in question.

In the light of the foregoing authorities, and without repeating the evidence heretofore set out, the record does show that the execution of the deeds in question is undisputed. The evidence shows that the deeds were found in a safe deposit box belonging to Harry Hipsley after his death by his wife, Susie Hipsley. The evidence discloses that neither John L. Hipsley, Emma L. Henderson, nor any other person ever saw the deeds when they visited Caroline E. Hipsley and she called for her metal box, exhibit 36, and took papers therefrom. This box held her personal papers. The evidence is undisputed that Caroline E. Hipsley told Anna McCormick, the practical nurse, that she made out and delivered the deeds. We refer to the evidence heretofore mentioned, paragraph 7 of the will of Caroline E. Hipsley, which reads as follows: "I have heretofore executed and delivered deeds conveying to each of my children the lands I want each of them to have and receive." This confirms the fact that Caroline E. Hipsley had executed and delivered the deeds in question. The fact that she did not give the deeds personally to John L. Hipsley and Emma L. Henderson does not warrant the conclusion that there was no delivery of the deeds in question.

It is evident from the record that the primary interest of the children of Caroline E. Hipsley was to provide for her, care for her, and see that she had every comfort.

So much of the income of the estate as was necessary was used for that purpose.

The evidence clearly indicates that the remaining children of Caroline E. Hipsley knew of the facts with reference to the lands they were to receive. The evidence indicates that Emma Henderson and John L. Hipsley were well acquainted with all matters relating to the estate, and with reference to the lands in question. John L. Hipsley testified on direct examination: "Q Now, just tell the Court in substance what the conversation and meeting was about, and what was the substance of the talks and conversation you had there at that time. * * * A Well, mother wanted to divide this land up, and we met there that day to divide it; and we all agreed to everything, and that was all there was to it." The will of Caroline E. Hipsley, by its terms, confirms this conception. The record shows that John L. Hipsley elected to and did accept the proceeds of the sale of land as evidenced by paragraph 5 of the will of Caroline E. Hipsley.

There is no evidence in the record that Caroline E. Hipsley, during her lifetime, ever exercised any dominion or control over the deeds after they were executed. We are convinced that under the state of the facts Caroline E. Hipsley absolutely conveyed her property evidenced by exhibits 7, 8, and 9, to Harry Hipsley. She had divested herself of all dominion and control over the deeds and shown an intent to convey the title to the lands in question without reservation.

Upon a trial de novo, we arrive at the same conclusion as the trial court, and the judgment of the trial court should be and is affirmed in all particulars, the plaintiff to pay all costs on appeal.

AFFIRMED.